UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOIDA ROSARIO,

               **Plaintiff,**

-vs-                                    **Case No.  6:11-cv-863-Orl-GJK**

COMMISSIONER OF SOCIAL
SECURITY,

               **Defendant.**
_____

## MEMORANDUM OF DECISION

     Loida Rosario (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her application for disability benefits (hereafter "Application"), which alleged a disability onset date of January 15, 2008.  Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed and remanded because the Administrative Law Judge (hereafter "ALJ") erred by: 1) failing to state with particularity the weight given and the reasons therefor to the Residual Functional Capacity (hereafter "RFC") opinions of Claimant's treating physicians:  Sanjay Sastry, M.D., Robert J. Martin, M.D., and Beverly M. Greenspan, M.D.; and 2) failing to provide legally sufficient reasons for finding Claimant's testimony not credible regarding the intensity, persistence and limiting effects of her back and neck pain.  Doc. No. 17 at 1.  For the reasons set forth below, the final decision of the Commissioner is **REVERSED and REMANDED** because the ALJ **did not state the weight given to, or articulate good cause for rejecting, Claimant's treating physicians' RFC opinions**.

## I. MEDICAL AND OPINION EVIDENCE

### A. Early Medical History

In October 2006, Claimant presented to Angela Saenz-Acevedo, M.D., complaining of left flank pain, nocturia and frequent dysuria. R. 208.[1] In December 2006, Claimant complained of low back pain and numbness in her right leg. R. 206. Dr. Saenz-Acevedo ordered an MRI which revealed "some degenerative disc of the lumbar spine with some disc bulges at L2-3 through L5-S1." R. 205, 207. Claimant was referred to Federico C. Vinas, M.D., a neurosurgeon, who conducted his initial evaluation on May 10, 2007. R. 221-23. Dr. Vinas indicated that Claimant was suffering from "[l]umbar spondylosis, severe back pain and clinical evidence of lower extremity radiculopathy," as well as "[c]ervical spondylosis with upper extremity radiculopathy." R. 223. Dr. Vinas instructed Claimant to avoid "repetitive bending or twisting of the spine, lifting of weights in excess of 15 lbs., or participating in any activity which might increase the stress over the lumbar or cervical spine." R. 223. On May 10, 2007, Dr. Vinas provided Claimant with a "Work Status" letter indicating that Claimant was limited to light duty work with the following restrictions: no lifting over twenty pounds; no excessive/repetitive bending or twisting; no prolonged sitting/standing or stooping; no excessive/repetitive pulling or pushing; and no excessive activity involving overhead activity or arms above the shoulders. R. 240.

On May 17, 2007, Dr. Vinas wrote another Work Status note indicating that Claimant should be excused from all work duties and that she would be reevaluated on June 25, 2007. R. 239. On June 25, 2007, Dr. Vinas indicated that Claimant was suffering from low back pain, lower extremity radiculopathy, cervical spondylosis without clinical evidence of a cervical

---

[1] The record does not reflect Dr. Saenz-Acevedo's practice specialty, if any.

myelopathy and diabetes related stress urinary incontinence. R. 227. Dr. Vinas instructed Claimant to avoid repetitive bending or twisting, lifting over fifteen pounds or any other activity that might increase the stress on her cervical or lumbar spine. R. 228.

### A. Sanjay Sastry, M.D., Pain Management

On January 17, 2008, Dr. Sastry, Claimant's pain management physician, completed a form indicating that Claimant is limited to "Light/Limited Duty." R. 353. Dr. Sastry indicated that Claimant cannot lift over five pounds, perform overhead work, bend or stoop. R. 353. On January 18, 2008, Dr. Sastry gave Claimant a lumbar epidural steroid injection. R. 372-73. On January 21, 2008, Claimant reported pain in the "right sacroiliac joint region" and Dr. Sastry administered a right sacroiliac joint injection. R. 367, 370. On January 22, 2008, Dr. Sastry administered, at Claimant's request, bilateral suboccipital blocks based on Claimant reporting "severe bilateral headaches." R. 366, 368. On January 28, 2008, Dr. Sastry gave Claimant a cervical epidural steroid injection. R. 363-64. Dr. Sastry indicated that Claimant reported "60% pain relief" after receiving her first lumbar epidural steroid injection. R. 363. On January 31, 2008, Dr. Sastry injected Claimant with a second lumbar epidural steroid injection. R. 360-61. Dr. Sastry noted that Claimant reported "75% pain relief" following her second cervical epidural steroid injection and was hoping for similar results with the lumbar epidural steroid injection. R. 360.

On February 7, 2008, Dr. Sastry, at Claimant's request, injected Claimant with a third lumbar epidural steroid injection. R. 357-58. Dr. Sastry noted that Claimant was aware that if the epidural steroid injections did not work she was to proceed with a neurosurgical consultation. R. 357. Dr. Sastry indicated that Claimant is "limited to light duty with no bending or stooping,

no overhead work no lifting over 3-5 pounds, and no pushing, pulling, or grasping in her occupation." R. 357. On February 11, 2008, Dr. Sastry indicated it was urgent for Claimant to have a "neurosurgical consultation for evaluation and possible . . . surgical decompression of [her] lumbar disc herniations" based on Claimant's statement that she was losing bowel and bladder function. R. 355.

On June 26, 2008, Dr. Sastry noted that Claimant was complaining of left-sided headache that made her head feel heavy. R. 459. Dr. Sastry noted that Claimant complained of left neck and upper back pain that was aggravated when she bent her neck, worked or exercised, but was relieved by medication, rest and sleep. R. 459. Dr. Sastry administered a left subocciptal block and trigger point injections to Claimant's left neck and upper back. R. 457-58.

On July 1, 2008, Claimant reported having a headache that made her head feel heavy, as well as left neck pain, upper back pain and muscle spasms. R. 452. Dr. Sastry, at Claimant's request, gave Claimant a left suboccipital block and trigger point injections. R. 452-54. On July 17, 2008, Dr. Sastry noted that Claimant stated the post trigger point injections and occipital nerve block helped her considerably, but that she was still experiencing pain in her neck and upper back. R. 451. Claimant requested a spinal cord stimulator and Dr. Sastry directed Claimant to return for a "trial placement of percutaneous spinal cord stimulator." R. 451. On July 22, 2008, Dr. Sastry performed a "fluoroscopically-assisted trial placement of percutaneous spinal cord stimulator." R. 446-48. On July 25, 2008, Dr. Sastry noted that Claimant reported excellent results with the trial placement of the spinal cord stimulator. R. 444. Dr. Sastry recommended placement of a permanent spinal cord stimulator. R. 444.

In summary, Dr. Sastry treated Claimant for her back pain and headaches, ultimately

recommending that Claimant have a permanent spinal cord stimulator be implanted. Based on his treatment relationship, Dr. Sastry opined that Claimant was limited to light duty work that did not involve bending, stooping, pushing, pulling, grasping, overhead work or lifting more than 3-5 pounds. R. 357.

**B. Robert J. Martin, M.D., Claimant's Treating Neurosurgeon**

On March 5, 2008, Robert J. Martin, M.D., Claimant's treating neurosurgeon, examined Claimant and found tenderness over the "right SI joint region" and significant restriction in range of motion because it aggravated her back pain. R. 381. Dr. Martin found that straight leg raising was positive on Claimant's right side at about 45 degrees with pain radiating down her leg, although Claimant reported the pain was worse in her back "as she was tender in the SIJ area." R. 381. Dr. Martin found that Claimant's hip flexion was somewhat restricted, Claimant had some bilateral sensory loss in the S1 distribution and diminished vibratory sense in her feet that was consistent with her history of diabetes. R. 381. Dr. Martin discussed having an "L5-S1 right-sided discectomy," explaining that this surgery may provide some relief for Claimant's leg pain but may not provide much relief for her back pain. R. 381. Dr. Martin indicated that Claimant nonetheless wanted to proceed with the surgery and that it would be "scheduled in the near future." R. 381.

On July 25, 2008, Dr. Martin noted that Claimant had a trial spinal cord stimulation that improved the discomfort in her neck and provided her with excellent relief of her low back pain and lower extremity symptoms. R. 441. Dr. Martin noted that Claimant had good strength in her upper and lower extremities. R. 441. Dr. Martin indicated that Claimant has done well with the dorsal column stimulator trial and he would start the approval process for a permanent trial. R.

441. On August 14, 2008, Claimant was admitted to the hospital and Dr. Martin implanted a permanent spinal cord stimulator. R. 506-08.

On August 28, 2008, Dr. Martin completed a lumbar spine RFC questionnaire. R. 509-13.[2] Dr. Martin diagnosed Claimant with lumbar spondylosis and indicated her prognosis is "fair." R. 509. Dr. Martin indicated that Claimant suffers from neck and lower back pain. R. 509. Dr. Martin indicated that emotional factors contribute to the severity of Claimant's symptoms and functional limitations, and that Claimant's impairments are reasonably consistent with the symptoms and functional limitations that Dr. Martin identified. R. 510. Dr. Martin indicated that, during a normal workday, Claimant's pain or other symptoms would frequently interfere with the "attention and concentration needed to perform even simple work tasks[.]" R. 510. Dr. Martin indicated that a side effect of Claimant's medications is lowered concentration and that Claimant's impairments have lasted or can be expected to last at least twelve months. R. 510.

Dr. Martin opined that Claimant can walk one block before needing to rest or experiencing severe pain. R. 510. Dr. Martin opined that Claimant can sit two hours and stand for one hour before needing to change positions. R. 511. In an eight-hour workday, Dr. Martin opined that Claimant can sit a total of two hours and stand a total of four hours. R. 511. Dr. Martin opined that Claimant needs to walk for ten minutes every hour during an eight-hour workday. R. 511. Dr. Martin opined that Claimant will need a job that permits shifting from sitting, standing or walking at will. R. 511. Dr. Martin opined that Claimant would need to take unscheduled breaks during an eight-hour workday. R. 511.

---

[2] Dr. Martin's RFC opinion was offered with regard to Claimant's impairments from April 2008 to the present. R. 509.

Dr. Martin opined that Claimant can occasionally lift and carry twenty pounds or less and rarely lift and carry fifty pounds. R. 512. Dr. Martin opined that Claimant can occasionally climb stairs, but never twist, stoop, crouch or climb ladders. R. 512. Dr. Martin opined that Claimant's impairments would produce good and bad days, and estimated that Claimant's impairments would require Claimant to be absent from work about four days per month. R. 512.

In summary, Dr. Martin treated Claimant for her back pain, diagnosed her with lumbar spondylosis and gave her a fair prognosis. R. 509. Dr. Martin opined that Claimant has limitations in her ability to sit, stand, walk and would need a job that permits shifting from and to these positions at will. R. 511. Dr. Martin opined that Claimant can only climb stairs and occasionally lift and carry twenty pounds. R. 512. Dr. Martin opined that Claimant should never twist, stoop, crouch or climb ladders and would need to miss about four days of work per month due to her impairments. R. 512.

**C. Beverly Greenspan, M.D., Neurologist**

In a letter dated March 20, 2009, Beverly Greenspan, M.D., an examining neurologist, noted that Claimant has a longstanding history of back pain and was complaining of pain in her left leg. R. 555. Dr. Greenspan noted that Claimant indicated the spinal cord stimulator was not benefiting her as it "seems to be stimulating motor pathways as it causes her left upper extremity to flex involuntarily." R. 555. Dr. Greenspan noted that Claimant wanted the spinal cord stimulator removed. R. 555. Dr. Greenspan noted that Claimant indicated she did not work because any exertion exacerbates her pain and results in her having to stay in bed for two or three days. R. 556.

Dr. Greenspan indicated her examination revealed normal power and tone in Claimant's

proximal and distal upper and lower extremities. R. 556. Dr. Greenspan indicated that Claimant's ankle jerk was absent, the right ankle jerk was 1+, her deep tendon reflexes 2+ and plantar responses were flexor or mute. R. 556. Dr. Greenspan indicated that Claimant reported ankle pain radiating to her knee when her left leg was straightened at the knee. R. 556. Dr. Greenspan indicated that Claimant's sensory examination revealed diminished pinprick up to Claimant's knees, no feeling of vibration in the toes, but joint position sense was felt in the toes. R. 556. Dr. Greenspan indicated that Claimant was able to walk tandem, albeit slowly, and was able to walk a little bit on her heels and toes. R. 557.

Dr. Greenspan opined that Claimant "has a longstanding history of chronic spine and extremity pain," but did not feel they were "related to any specific neurological disorder that I am competent to treat." R. 557. Dr. Greenspan indicated that Claimant suffers from distal sensory loss, which is consistent with diabetic sensory polyneuropathy, but her complaints of "pain in her left lower extremity and not in the right" are not a symptom characteristic of diabetic neuropathy. R. 557. Dr. Greenspan indicated she was unfamiliar with spinal cord stimulators and referred Claimant to other doctors who might be able to help her. R. 557. Dr. Greenspan prescribed Lyrica and recommended Claimant exercise in a pool to help relieve her back pain. R. 557. Dr. Greenspan did not schedule Claimant for a follow-up appointment based on her belief that Claimant did not have a "neurological condition that requires ongoing visits with a neurologist." R. 557. Dr. Greenspan indicated that Claimant should see a specialist in pain management or rehabilitation medicine. R. 557-58.

On May 28, 2009, Dr. Greenspan offered an RFC opinion. R. 545-50.[3] Dr. Greenspan indicated that after her initial evaluation on March 20, 2009, Claimant returned on May 28, 2009, and "brought these forms, denied any change." R. 545. Dr. Greenspan diagnosed Claimant with chronic spine pain, left lower extremity pain and diabetic neuropathy. R. 545. Dr. Greenspan indicated that her March 20, 2009, examination revealed distal sensory loss in Claimant's feet and legs. R. 546. Dr. Greenspan opined that Claimant's impairments have lasted for at least twelve months. R. 546. Dr. Greenspan opined that Claimant cannot perform her past work. R. 547. Dr. Greenspan opined that Claimant's impairments interfere with her ability to work on a regular, continuous and sustained basis. R. 547. Dr. Greenspan opined that Claimant cannot work. R. 547.

On May 28, 2009, Dr. Greenspan completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)." R. 548-50.[4] At the top of the form, just before the section addressing limitations in standing, sitting, lifting/carrying, posture, manipulation, vision, communication and environment, Dr. Greenspan wrote her "neurologic evaluation does not allow me to make these quantitative assessments." R. 549. However, Dr. Greenspan opined that Claimant can stand and/or walk between two and six hours in an eight-hour workday. R. 549. Dr. Greenspan opined that Claimant can sit less than six hours in an eight-hour workday. R. 549.

---

[3] Following her RFC opinion, Dr. Greenspan wrote a progress note indicating that Claimant asked her to fill out forms to support her claim for disability. R. 552. Dr. Greenspan summarized Claimant's treatment records and prescribed Amitriptyline instead of Lyrica. R. 553.

[4] The record contains one fully completed medical source statement and the first page of another. R. 548-50. The sitting, postural and lifting/carrying limitations are identical in the partial and fully completed medical source statement. The partially completed medical source statement differs in that Dr. Greenspan opines that Claimant can stand and/or walk less than two hours in an eight-hour workday, versus between two and six hours in the fully completed medical source statement. R. 548-49. The partially completed medical source statement also differs in that Dr. Greenspan notes that Claimant cannot lift more than five pounds or sit too long. R. 548. The partially completed medical source statement also does not contain Dr. Greenspan's note that her neurological evaluation did not allow her to make "these quantitative assessments." R. 549. There is no explanation why Dr. Greenspan partially completed one medical source statement or why it differs from the fully completed one.

Dr. Greenspan opined that Claimant can frequently and occasionally lift and/or carry less than ten pounds. R. 549. Dr. Greenspan also opined that Claimant should never crouch, crawl, stoop or climb ramps or stairs. R. 549. Dr. Greenspan did not indicate whether Claimant had any postural, manipulative, environmental or visual/communicative limitations. R. 549-50. In the comments section of the medical source statement, Dr. Greenspan indicated that she evaluated Claimant as a neurologist and the "neurological findings were distal sensory loss," which are "unrelated to [Claimant's] chief [complaint of] pain in her spine, which is her reason for being unable to work" and that she was unable to answer the above questions relating to distal sensory loss. R. 550.

In summary, Dr. Greenspan indicated that Claimant has a long history of chronic back pain that is not related to a neurologic condition. R. 557. Dr. Greenspan indicated that Claimant suffers from distal sensory loss and has limitations in her ability to sit, stand, walk, lift and carry. R. 549. Dr. Greenspan opined that Claimant can never crouch, crawl, stoop or climb ramps or stairs. R. 549.

**D. Carlos M. Sanchez, M.D., State Consultative Examining Doctor**

On April 22, 2008, Carlos M. Sanchez, M.D., examined Claimant for the Commissioner. R. 402-07. Dr. Sanchez noted that Claimant reports she is unable to work due to chronic cervical back pain, as well as thoracic and lumbar back pain. R. 402. Dr. Sanchez noted that Claimant indicated she recently had lumbar surgery that improved her low back pain, but now "has a very bad feeling in her thoracic area, and it gets her very tired after a couple of hours of standing." R. 402. Dr. Sanchez noted that Claimant has had diabetes for ten years and problems with neuropathy. R. 402.

Dr. Sanchez's physical examination revealed mild loss of range of motion in Claimant's thoracic and lumbar spine. R. 403. Dr. Sanchez indicated that Claimant was "tender to palpation on her cervical spine around C6-C7" and is "tender on her lumbar spine, L3-L5." R. 403. Dr. Sanchez indicated that Claimant had full range of motion in her upper extremities and joints with "5/5 upper extremity strength and sensation with the exception of her right hand." R. 402. Dr. Sanchez also indicated that Claimant had decreased pinprick on her fingers. R. 402. Dr. Sanchez indicated that Claimant had full range of motion in her lower extremities and has decreased sensation to pinprick on her right lateral leg. R. 404. Dr. Sanchez indicated that Claimant's gait was normal and she could both heel and toe walk. R. 404. Dr. Sanchez opined that Claimant had diabetes, "[c]hronic cervical neck pain with right-sided paresthesia" and "[c]hronic lumbar back pain status post surgery with right-sided paresthesias." R.404.

### E.  Edward DeMiranda, M.D., Non-Examining State Consultant

On October 15, 2008, Edward DeMiranda, M.D., a non-examining state consultant, completed a physical RFC assessment. R. 483-90. Dr. DeMiranda opined that Claimant can frequently lift and/or carry ten pounds and occasionally lift and/or carry twenty pounds. R. 484. Dr. DeMiranda opined that Claimant can sit, stand and/or walk six hours in an eight hour day with normal breaks. R. 484. Dr. DeMiranda opined that Claimant's ability to push and/or pull is unlimited within the weight limitations prescribed on her ability to lift and/or carry. R. 484.

Dr. DeMiranda opined that Claimant should never climb ladders, ropes or scaffolds. Dr. DeMiranda opined that Claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs. R. 485. Dr. DeMiranda opined that Claimant is limited in her "[f]eeling (skin receptors" ability, but otherwise does not have any manipulative, visual or communicative

limitations. R. 486-87. Dr. DeMiranda opined that Claimant should avoid concentrated exposure to extreme cold, vibration, hazards and fumes, odors, dusts, gases and poor ventilation. R. 487.

Dr. DeMiranda indicated that Claimant's symptoms are attributable to a medically determinable impairment; the severity or duration of the symptoms are not disproportionate to the expected severity or duration; and the severity of the symptoms and their alleged effect on function is consistent with the medical and nonmedical evidence. R. 488. Dr. DeMiranda further indicated that Claimant's symptoms are credible, she is scheduled for a permanent spinal cord stimulator and Claimant's "asthma, hypercholesterolemia and DM" are well controlled with her present treatment regimen. R. 488.

## II. ADMINISTRATIVE PROCEEDINGS

On February 5, 2008, Claimant filed her Application. R. 115-22. The Application was denied initially and on reconsideration. R. 52-55. On November 5, 2008, Claimant requested a hearing before an ALJ. R. 66. On February 3, 2010, the ALJ conducted a hearing where Claimant and a vocational expert testified. R. 35-51.

Claimant previously worked as a CNA or Certified Nursing Assistant. R. 38. Claimant testified that in 2006 she began experiencing back problems in the form of not being able to stand for too long, a stiff neck and not being able to sleep. R. 39. Claimant testified that she initially went to therapy, but was unable to withstand the pain. R. 40. Claimant testified that due to her financial condition she returned to work. R. 40. Claimant testified that she started having back problems again in 2007 and treated with Dr. Martin who initially sent her to pain management and later performed surgery to implant electrodes in her lower back. R. 40.

Claimant testified that the electrodes are not working because they are supposed to stimulate her neck, arms and legs, but instead just jerks her hand. R. 41.

Claimant testified that she moved to Connecticut after her house burned down and went into foreclosure. R. 41. Claimant testified that she treated with a psychiatrist for depression and went to a neurologist who prescribed medication for her neuropathy. R. 41. Claimant testified that she has moved back to Florida and treated with Dr. Gibson who performed a CT scan and prescribed her medication. R. 42. Claimant testified that Dr. Gibson told her that she needs to go to a pain management doctor, but she has been unable to do so because she does not have insurance. R. 42. Claimant testified that she will probably have surgery to remove the electrodes in her lower back because her spurs are pinching the nerve going to her left leg. R. 42.

Claimant testified that she has a bulging disc in her neck and two spurs. R. 43. Claimant testified that she has pain in her lower back down through her legs, headaches, a loss of sensation on her left side and pain in her legs that prevents her from sleeping. R. 42-43. Claimant testified that she is prescribed Klonopin to help her sleep and that she sleeps about four hours a night. R. 44. Claimant testified that the Klonopin gives her headaches and hallucinations. R. 45. Claimant testified that she takes two medications for her diabetes and they give her diarrhea. R. 45. Claimant testified that she no longer feels like going out and just stays in her room. R. 46.

Claimant testified that she can sit for about an hour and then walks back and forth until her legs start to feel weak. R. 44. Claimant testified that she can stand for about thirty minutes. R. 44. Claimant testified that when she begins an activity, such as cooking, she must rest ten minutes before she can complete it. R. 44. Claimant testified that she tries to wash dishes and

do laundry.  R. 45.  Claimant testified that her husband cleans the house and her sister sweeps. R. 45. Claimant testified that she cannot concentrate and sometimes forgets what she is doing. R. 45.

The ALJ asked the vocational expert whether a person of Claimant's age, education and past work experience could perform Claimant's past work with the following limitations:  low stress, simple and unskilled work that requires one to three step instructions; lifting or carrying ten pounds frequently and twenty pounds occasionally; a job with a sit/stand option; can stand, sit and/or walk six hours in an eight-hour workday; avoids workplace hazards, frequent climbing or descending of stairs and pushing or pulling with the lower extremities; no climbing and occasional balancing, stooping, crouching, kneeling and crawling; and depression which affects the ability to concentrate upon complex or detailed tasks.  R. 48.  The vocational expert testified that a person with these limitations could not perform Claimant's past relevant work.  R. 48.  The vocational expert testified that such a person could perform light, unskilled work, such as fast food work, cashier II, and factory packager.  R. 49.  When asked whether this same person could "be competitive in the job arena" if she had to miss four or more days of work per month, the vocational expert testified the person could not.  R. 49-50.

On March 24, 2010, the ALJ issued his decision denying the Application.  R. 14-29.  The ALJ found that Claimant suffers from the following severe impairments:  degenerative disc disease of the cervical and lumbar spine with radiculopathy, diabetes mellitus, obesity, an anxiety disorder, posttraumatic stress disorder and an adjustment disorder with mixed depression and anxiety.  R. 16.  The ALJ further found that Claimant's "adjustment disorder, anxiety disorder, and PTSD" mildly restrict her activities of daily living, make it mildly difficult to

maintain social functioning, make it moderately difficult to maintain concentration, persistence or pace, and that Claimant has had no episodes of decompensation. R. 17.

The ALJ found that Claimant retained the RFC to perform light work with the following limitations: frequently lift or carry ten pounds and twenty pounds occasionally; stand, sit or walk six hours in an eight-hour workday with an option to alternate between sitting and standing at will; limitations against pushing and pulling with bilateral extremities; occasionally walk up or down stairs, balance, stoop, kneel, crouch and crawl; never climb; avoid workplace hazards such as heights and moving machinery; and low stress work that is simple and unskilled involving instructions requiring one to three steps. R. 20. The ALJ also found that Claimant "has depression which affects her ability to concentrate upon complex or detailed tasks, but would remain capable of understanding, remembering, and carrying out simple job instructions." R. 20.

In making his RFC finding, the ALJ acknowledged the RFC opinions rendered by Drs. Sastry, Martin and Greenspan, Claimant's treating doctors. R. 25. In regard to the weight given these doctors' opinions, the ALJ stated:

> These opinions, however, are not accorded controlling weight because opinions on the issues of whether the claimant is "disabled" or "unable to work" are reserved to the Commissioner because they are administrative findings that are dispositive of a case. Moreover, these opinions are inconsistent with these doctors' own examination records. In addition, these opinions are inconsistent with the evidence as a whole (as set forth below).

R. 25 (internal citation omitted). Thus, the ALJ gave three reasons for not giving Drs. Sastry, Martin and Greenspan's RFC opinions controlling weight. First, the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner. Second, their opinions are inconsistent with their own records. Third, their opinions are inconsistent with the medical

record as a whole, which he purports to demonstrate in the following paragraphs of his opinion.

Instead of giving Claimant's treating doctors' RFC opinions controlling weight, the ALJ gave

Dr. DeMiranda's, a State agency medical consultant, RFC opinion "some weight because it is

consistent, in some respects, with the objective medical evidence and the records of the doctors

who had the benefit of actually examining the claimant." R. 25.[5]

In support of his statement that Drs. Sastry, Martin and Greenspan's RFC opinions are

inconsistent with their own medical records and the medical record as a whole, the ALJ stated:

> Similarly, (as previously discussed) Dr. Sanchez, in April 2008, found the claimant with a normal gait, normal deep tendon reflexes, intact sensations in her bilateral upper extremities, 5/5 motor strength, only mild loss of range of motion of her cervical and lumbar spines, and full ranges of motion of all other musculoskeletal joints, despite having tenderness-to-palpation over her C6-C7 and L3-L5 levels, and despite having decreased pinprick sensations in her right fingers and down her lateral right leg.
>
> In June 2008, Dr. Sastry also found the claimant with multiple trigger points in her left neck and upper back region, but only mild tenderness over the left base of her skull. Also, in June 2008, Dr. Garcia found the claimant with a supple neck, as well as normal deep tendon reflexes, and no musculoskeletal atrophy or weakness.
>
> Further, in July 2008, subsequent to spinal cord stimulator implantation, Dr. Martin noted the claimant's report that she (still) had a little bit of discomfort in her neck, but that it was much improved. Dr. Martin also noted the claimant's report that she had excellent relief of her lower back pain and lower extremity symptoms, and that she had good strength in her bilateral upper and lower extremities. Also, in July 2008, Dr. Dotts noted the claimant's report that she was doing much better and had good success, following her spinal cord stimulator implantation.
>
> Moreover, in April 2009, Dr. Greenspan found the claimant with normal muscle strength and tone in her bilateral upper and lower

---

[5] On June 18, 2008, Dr. Huldie Scott, a non-examining state consultant, completed a physical RFC assessment. R. 433-40. The ALJ did not address this opinion in his decision.

extremities, an awkward, but not abnormal gait, and negative straight-leg raise tests, despite having obesity, pain between her left ankle and left knee, and symmetric, diminished pinprick sensations in her bilateral knees. In April 2009, Dr. Rhule also found the claimant with normal sensations, normal motor strength, a stable pelvis, normal ranges of motion, and no-tender hips, despite having muscle spasms resulting from a fall with resultant lumbosacral strain/sprain.

Also, in April 2009 and January 2010, CT scans of the lumbar spine revealed disc bulges and osteophytes, but only mild foraminal narrowing, as well as no significant spinal stenosis or nerve root impingement. In April 2009, CT scans of the cervical spine and head also revealed no abnormality.

Furthermore, in November 2009, x-rays of the claimant's lumbar spine revealed only mild spondylodegenerative changes, and x-rays of the cervical spine revealed only moderate spondylodegenerative changes. In addition, in January 2010, Dr. Gipson noted that the claimant had chronic pain in her neck and lower back, along with obesity, but no abnormality of her extremities.

R. 25-26 (internal citations omitted).[6] Thus, the ALJ cited medical record evidence indicating that Claimant's pain was improved after the trial spinal cord stimulator was implanted, she had normal range of motion, normal strength and tone in her extremities and mild or moderate spondylodegenerative changes in her cervical and lumbar spine.

## III. ANALYSIS

Claimant raises two issues on appeal. *See* Doc. No. 17 at 1. The Court finds that the first issue, the ALJ's failure to give controlling weight to Drs. Sastry, Martin and Greenspan's RFC opinions, is dispositive. The Commissioner contends that the ALJ "properly rejected the opinions of Drs. Sastry, Martin, and Greenspan because the opinions were inconsistent with the doctors' own examination records and with the evidence as a whole." Doc. No. 18 at 13. The

---

[6] The ALJ refers to Randall James Dotts as a doctor. However, Mr. Dotts is a physician's assistant. *See* R. 467.

Commissioner asserts that Dr. Sastry's RFC opinion is inconsistent with his own records, which indicate that Claimant's pain improved with treatment, and was offered prior to Claimant's surgery for a spinal cord stimulator. Doc. No. 18 at 13-14. The Commissioner asserts that Dr. Martin's opinion is inconsistent with his records, which indicate that Claimant's pain relief was improved with the temporary spinal cord stimulator and an essentially unremarkable examination that occurred two weeks prior to his RFC opinion. Doc. No. 18 at 14. The Commissioner asserts that the ALJ properly rejected Dr. Greenspan's opinion because Dr. Greenspan only treated Claimant once, indicated that Claimant did not have a neurologic condition and indicated that her evaluation did not permit her to make the quantitative assessments asked on the RFC form. Doc. No. 18 at 15.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on

the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion." 631 F.3d at 1178-79. The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.'" *Id.* (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Thus, the treating physician's treatment notes constituted an opinion. *Id.* The Eleventh Circuit noted that the ALJ only referenced the treating physician once and did not state the weight given to the treating physician's opinion. *Id.* The Eleventh Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id.* (emphasis added).

Absent good cause, the opinions of treating physicians must be accorded substantial or

considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was
> not bolstered by the evidence; (2) evidence supported a contrary
> finding; or (3) treating physician's opinion was conclusory or
> inconsistent with the doctor's own medical records." *Phillips v.
> Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations
> omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th
> Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th
> Cir.1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[7]  "The opinion of a non-

examining physician does not establish the good cause necessary to reject the opinion of a

treating physician."  *Id*.  Moreover, the opinions of a non-examining physician do not constitute

substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090,

1094 (11th Cir. 1985).

The opinions or findings of a non-examining physician are entitled to little weight when

they contradict the opinions or findings of a treating or examining physician.  *Lamb v. Bowen*,

847 F.2d at 703.  Moreover, conclusory statements by an ALJ to the effect that an opinion is

inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's

decision is supported by substantial evidence unless the ALJ articulates factual support for such a

conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D.

Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion

requires remand); *see also Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008

WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating

doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and

remand is required.").

---

[7] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

In this case, the ALJ indicated that Drs. Sastry, Martin and Greenspan's RFC opinions were "not accorded controlling weight." R. 25. However, the ALJ did not indicate what weight he actually gave to Drs. Sastry, Martin and Greenspan's RFC opinions. *Winschel* requires the ALJ to state both the weight given to these opinions and the reasons therefor. 631 F.3d at 1178-79. Accordingly, the ALJ erred by failing to state the weight given to Drs. Sastry, Martin and Greenspan's RFC opinions.

The ALJ also did not articulate good cause for giving Drs. Sastry, Martin and Greenspan's RFC opinions less than controlling weight. The ALJ gave three reasons for giving Drs. Sastry, Martin and Greenspan's RFC opinions less than controlling weight. The first reason was that "opinions on the issues of whether the claimant is 'disabled' or 'unable to work' are reserved to the Commissioner because they are administrative findings that are dispositive of a case." R. 25 (internal citation omitted).

Dr. Sastry opined that Claimant cannot lift over five pounds, perform overhead work, bend or stoop and was limited to "Light/Limited Duty." R. 353. In his RFC opinion, Dr. Martin provided limitations on Claimant's ability to walk, sit, stand, lift and carry. R. 511-12. Dr. Martin provided his opinion on Claimant's limitations in the areas of twisting, stooping/bending, crouching/squatting and climbing. R. 512. Dr. Martin also opined that Claimant's limitations and impairments would require her to be absent from work about four days per month. R. 512. Although Dr. Greenspan opined that Claimant is unable to work, she also provided specific functional limitations on Claimant's ability to sit, stand, walk, lift and carry. R. 548-49. Dr. Greenspan also provided her opinion on Claimant's limitations in the areas of stooping, crawling, crouching and climbing. R. 548-49.

Drs. Sastry, Martin and Greenspan did not simply opine that Claimant is disabled or unable to work. Rather, they provided opinions on Claimant's physical abilities and limitations in light of her impairments. The ALJ was required to state the weight given to these opinions and the reasons therefor, which, as noted above, the ALJ failed to do. *See Winschel* 631 F.3d at 1178-79. Accordingly, the ALJ's first reason for not giving Drs. Sastry, Martin and Greenspan's RFC opinions controlling weight is unavailing.

A second reason was that Drs. Sastry, Martin and Greenspan's RFC opinions are "inconsistent with the evidence as a whole (as set forth below)." R. 25. The evidence the ALJ "set forth below" are summaries of several doctors', including Drs. Sastry, Martin and Greenspan, physical examination findings on selected dates. R. 25-26. The ALJ pointed out that Dr. Sastry, in June 2008, found Claimant "with multiple trigger points in her left neck and upper back region, but only mild tenderness over the left base of her skull." R. 25. The ALJ pointed out that Dr. Martin, in July 2008, indicated that Claimant still reported a "little bit of discomfort in her neck, but that it was much improved shortly after the trial spinal cord stimulator was implanted. Dr. Martin also noted the claimant's report that she had excellent relief of her lower back pain and lower extremity symptoms, and that she had good strength in her bilateral upper and lower extremities." R. 25-26. The ALJ pointed out that Dr. Greenspan, in April 2009, found Claimant had "normal muscle strength and tone in her bilateral upper and lower extremities, an awkward, but not abnormal gait, and negative straight-leg raise tests, despite having obesity, pain between her left ankle and left knee, and symmetric, diminished pinprick sensations in her bilateral knees." R. 26.

The findings cited by the ALJ essentially indicate that Claimant obtained pain relief after the trial spinal cord stimulator was implanted, had normal strength, normal deep tendon reflexes and full range of motion. R. 25-26. The ALJ does not state with specificity how these physical examination findings are inconsistent with Drs. Sastry, Martin and Greenspan's RFC opinions. The conflict perceived by the ALJ was not articulated with specificity and it would be improper for the Court to draw its own conclusions from the ALJ's summary of the medical evidence. *See Patterson v. Chater*, 983 F. Supp. 1410, 1413 (M.D. Fla. 1997) (it is the ALJ's duty, not the court's, to resolve conflicts in the evidence).[8] Accordingly, the ALJ's finding that Drs. Sastry, Martin and Greenspan's RFC opinions conflict with the medical record as a whole is unpersuasive.

A third reason was that Drs. Sastry, Martin and Greenspan's RFC opinions "are inconsistent with [their] own examination records." R. 25. The ALJ did not support this reason with any record facts or otherwise attempt to explain how Drs. Sastry, Martin and Greenspan's RFC opinions are inconsistent with their medical records. The Eleventh Circuit has stated that an ALJ's failure to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). Thus, blanket statements or conclusions are not sufficient to support an ALJ's decision. To the extent the ALJ may have been referring to whatever conflicts he may have perceived in the summary of the medical records addressed above, they are unpersuasive for the same reasons set forth above.

---

[8] The ALJ's summary of Dr. Martin's records reflect different results following installation of the temporary and permanent spinal cord stimulators. R. 25-26. Unfortunately, the permanent spinal cord stimulator apparently was much less effective in relieving Claimant's pain. The RFC opinion from Drs. Martin and Greenspan were rendered after installation of the permanent spinal cord stimulator. *See* R. 509-13, 545-50. The ALJ simply does not state with any specificity what weight was actually given to the more recent opinions and the reasons therefor.

Accordingly, the denial of Claimant's Application is **REVERSED** and **REMANDED**.

**IV. CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED and REMANDED**, pursuant to sentence four of Section 405(g) for further proceedings; and

2. The Clerk is directed to enter judgment in favor of Claimant and to close the case.

**DONE and ORDERED** in Orlando, Florida on July 3, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Robert F. Sprick
P.O. Box 1232
Orlando, Florida 32802-1232

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida 33602

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
D. Logan Pool, Assistant Regional Counsel
Office of the General Counsel, Region IV
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Douglas A. Walker
Administrative Law Judge
c/o Office of Disability Adjudication and Review

Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801